[Cite as *In re A.J.* , 2014-Ohio-5046.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| In re A.J., | : | No. 14AP-284 |
| | | (C.P.C. No. 10JU-989) |
| (S.J., | : | |
| | | (REGULAR CALENDAR) |
| Appellant). | : | |
| | | |
| In re S.J.J., | : | No. 14AP-285 |
| | | (C.P.C. No. 09JU-14928) |
| (S.J., | : | |
| | | (REGULAR CALENDAR) |
| Appellant). | : | |
| | | |
| In re A.D.J., | : | No. 14AP-286 |
| | | (C.P.C. No. 12JU-13299) |
| (S.J., | : | |
| | | (REGULAR CALENDAR) |
| Appellant). | : | |
| | | |
| In re S.D.J., | : | No. 14AP287 |
| | | (C.P.C. No. 09JU-14929) |
| (S.J. | : | |
| | | (REGULAR CALENDAR) |
| Appellant). | : | |

---

# D E C I S I O N

### Rendered on November 13, 2014

---

*Giorgianni Law LLC,* and *Paul Giorgianni,* **for appellant-mother S.D.J..**

*Tyack, Blackmore, Liston & Nigh, Co., LPA,* and *Elizabeth R. Werner,* **for appellee Samella McDonald.**

*Skinner & Associates, LLC,* and *Todd A. Fichtenberg,* **for appellee-father J.R.**

APPEALS from the Franklin County Court of Common Pleas,
Division of Domestic Relations, Juvenile Branch

DORRIAN, J.

{¶ 1} Appellant, S.J. ("appellant"), is the mother of four children, S.D.J., S.J.J., A.J., and A.D.J., whose custody is at issue in this consolidated appeal of the March 13, and 14, 2014 judgments of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch. In its judgments, the trial court adopted agreed entries that granted legal custody of S.D.J. and S.J.J. to Regina Preston, A.J. to Samella McDonald, and A.D.J. to Rebecca Pearson. For the reasons that follow, we affirm.

I. Facts and Procedural History

{¶ 2} Because the facts and procedural history of the cases are interrelated, we discuss them together. On November 12, 2009, Franklin County Children Services ("FCCS") filed a complaint in the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch alleging that S.D.J. and S.J.J. were neglected and dependent children.  On the same day, the juvenile court magistrate filed orders that granted temporary custody of the children to FCCS, and appointed a guardian ad litem and counsel for S.D.J. and S.J.J.  The magistrate also appointed a guardian ad litem and counsel for appellant.  On January 20, 2010, the children's guardian ad litem filed his first report, recommending that the court grant FCCS's request for temporary custody because appellant's "mental health is simply too unstable to provide adequate care for the children."

{¶ 3} On January 25, 2010, FCCS filed a complaint alleging that A.J. was a neglected and dependent child. On January 26, 2010, the magistrate filed an order granting temporary custody of A.J. to FCCS.  On the same date, the magistrate appointed a guardian ad litem and counsel for A.J.; the magistrate also appointed a guardian ad litem and counsel for appellant in that case.

{¶ 4} On January 20, 2010, the magistrate held an adjudicatory hearing concerning S.J.J. and S.D.J. and issued an order that (1) dismissed the neglect cause of

action in the complaints at the request of the state and amended the complaints to reflect the dismissal, (2) found S.J.J. and S.D.J. to be dependent minors and made them wards of the court, (3) adopted a case plan for both children, and (4) granted FCCS continuing temporary custody of the children.  On January 28, 2010, the magistrate filed an entry, which the trial court adopted on the same day, reflecting the January 20, 2010 order.

{¶ 5}  On March 10, 2010, the magistrate held an adjudicatory hearing in the matter of A.J. and issued an order that (1) dismissed the neglect cause of action in the complaint at the request of the state and amended the complaints to reflect the dismissal, (2) found A.J. to be a dependent minor and made A.J. a ward of the court, (3) adopted a case plan, and (4) granted FCCS continuing temporary custody. On March 16, 2010, the magistrate filed an entry, which the trial court adopted the same day, reflecting the March 10, 2010 order.

{¶ 6}  On July 6, 2010, FCCS filed motions to extend its temporary custody of S.D.J. and S.J.J. On August 16, 2010, the magistrate issued a decision granting the motion of FCCS to extend custody over S.D.J. and S.J.J. for a period of six months. On the same date, the magistrate also issued a decision maintaining the status of A.J. as a ward of the court and extending FCCS's custody of A.J. On August 24, 2010, the magistrate filed entries reflecting the August 16, 2010 orders, which the trial court adopted on the same day.

{¶ 7}  On December 10, 2010, FCCS filed motions to extend its temporary custody of S.D.J., S.J.J., and A.J. On January 4, 2011, FCCS filed motions for shelter care and to suspend the visitations of appellant with all children, citing threats of physical violence made by appellant to her caseworker.  On January 6, 2011, the magistrate issued an order suspending appellant's visitation with her children.  On February 24, 2011, the magistrate issued a decision, which the trial court adopted on the same day, dismissing the motions filed on January 4, 2011, and granting the motions to extend temporary custody filed on December 10, 2011.

{¶ 8}  On May 10, 2011, Regina Preston, also known as Regina Jones, maternal step-grandmother of the children, filed motions for grandparent visitation and to be

added as a party in all three children's cases. The magistrate filed an entry on June 20, 2011 dismissing Preston's motion for visitation, finding that visitation was not suitable at that time.

{¶ 9}  On June 15, 2011, FCCS filed motions for permanent custody of S.D.J., S.J.J., and A.J. In support of its motions, FCCS alleged that appellant struggled with unacknowledged, significant mental health issues and had been involved in severe verbal and physical altercations. On October 31, 2011, the trial court held a pretrial hearing on the motions for permanent custody. On November 2, 2011, the trial court filed a judgment entry granting Regina Preston visitation with all three children for two hours per week. In the same entry, the court ordered that J.R., father of S.J.J., be allowed to visit S.J.J. for two hours per week.

{¶ 10} On May 15, 2012, Regina Preston filed motions to be added as a party and for legal custody of all three children. On August 6, 2012, Samella McDonald, foster mother of A.J., filed motions to be added as a party and for legal custody of A.J.

{¶ 11} On October 10, 2012, FCCS filed a complaint alleging that A.D.J. was a dependent child. On the same date, the magistrate issued an order granting FCCS temporary custody of A.D.J. Additionally, Regina Preston filed a motion for an alternative disposition, requesting to be joined as a party to the action and seeking legal custody of A.D.J.  On October 18, 2012, the magistrate filed an entry appointing a separate guardian ad litem and attorney for both A.D.J. and appellant. On January 3, 2013, Rebecca Pearson, foster mother of A.D.J., filed motions to be added as a party and for legal custody of A.D.J.

{¶ 12} On January 16, 2013, the magistrate filed a decision, which was adopted by the trial court on the same day, finding A.D.J. to be a dependent minor, making A.D.J. a ward of the court, adopting a case plan, and granting FCCS temporary custody.

{¶ 13} On February 28, 2013, FCCS filed motions for shelter care and to suspend or modify appellant's visits with all children. On March 1, 2013, the magistrate issued an order granting the February 28, 2013 motion and permitting FCCS to require a search of appellant prior to visitation. On March 6, 2013, FCCS again filed motions for shelter care

and to suspend appellant's visitation with all children after appellant allegedly failed to comply with the March 1, 2013 order at a regular visitation. On March 7, 2013, the magistrate issued an order suspending appellant's visits; on April 24, 2013, the magistrate issued an order restoring appellant's visits provided that she not bring any items with her to the visits.

{¶ 14} On April 5, 2013, FCCS filed a motion for permanent court commitment of A.D.J. On March 4, 2014, the children's guardian ad litem filed reports in the matters of S.D.J., S.J.J., and A.J., recommending that the trial court grant permanent custody of the children to FCCS because appellant's "erratic, violent behavior and mental health issues make reunification impossible." (Guardian ad Litem's Report, 7.)

{¶ 15} On March 10, 2014, the trial court held a combined hearing to consider outstanding motions for all cases. Prior to the hearing, all parties signed an agreement granting legal custody of the children, as follows: S.D.J. and S.J.J. to Regina Preston, A.J. to Samella McDonald, and A.D.J. to Rebecca Pearson. The parties prepared four separate agreed entries that each reflected the signatures of all parties to the case. Following a hearing at which all parties except appellant were present, the trial court adopted the agreed entries on March 10, 2014. The court then filed the entries on March 13, 2014.

## II. Assignments of Error

{¶ 16} Appellant appeals assigning the following two errors for our review:

> I. The trial court violated mother's constitutional and procedural due process rights when it granted the motion for legal custody without obtaining the mother's knowing, intelligent, and voluntary consent.

> II. The trial court erred in awarding legal custody of the minor child to non-parents without hearing evidence and considering whether or not it was in the best interest of the minor children.

## III. First Assignment of Error

{¶ 17} We first note that only Samella McDonald and J.R. have filed responsive briefs. Pursuant to App.R. 18(C), if an appellee fails to file its brief within the time

provided under the rule, or within the time as extended, the court will not permit the appellee to be heard at oral argument except by permission of the court upon a showing of good cause submitted in writing prior to oral argument. *See Arlington Bank v. BEE, Inc.*, 10th Dist. No. 10AP-41, 2010-Ohio-6040, ¶ 26-28. The court may additionally accept the appellant's statement of the facts and issues as correct and reverse the lower court's judgment if the appellant's brief reasonably appears to sustain such action. App.R. 18(C). However, the appellant is not entitled to judgment in its favor merely because the appellee failed to file a brief. *Id.* at ¶ 28.

{¶ 18} "The right to parent one's children is a fundamental right." *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, ¶ 28, citing *Troxel v. Granville*, 530 U.S. 57, 66 (2000). This fundamental right is protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution and by Section 16, Article I of the Ohio Constitution. *In re Hockstok*, 98 Ohio St.3d 238, 2002-Ohio-7208, ¶ 16. However, the state possesses broad authority to intervene to protect children from abuse and neglect. *In re C.F.* at ¶ 28, citing R.C. 2151.01.

{¶ 19} R.C. 2151.23(A)(1) provides that a juvenile court has exclusive original jurisdiction concerning children alleged to be abused, neglected, or dependent. R.C. 2151.23(A)(2) grants a juvenile court jurisdiction "to determine the custody of any child not a ward of another court of this state." However, R.C. 2151.23(A)(2) "does not articulate a standard for the juvenile court to apply when making such determinations." *In re C.R.*, 108 Ohio St.3d 369, 2006-Ohio-1191, ¶ 12. Pursuant to R.C. 2151.353(A)(3), "[o]nce a child is adjudicated abused, neglected, or dependent, a juvenile court may award legal custody of the child to any parent or person who files a motion requesting legal custody." *In re L.D.*, 10th Dist. No. 12AP-985, 2013-Ohio-3214, ¶ 6.

{¶ 20} We first note that the agreed entries in the present matter concerned the award of legal custody, not permanent custody, of the children. R.C. 2151.011(B)(32) defines "permanent custody" as "a legal status that vests in a public children services agency or a private child placing agency, all parental rights, duties, and obligations, including the right to consent to adoption, and divests the natural parents or adoptive

parents of all parental rights, privileges, and obligations, including all residual rights and obligations." R.C. 2151.011(B)(21) defines "legal custody" as "a legal status that vests in the custodian the right to have physical care and control of the child and to determine where and with whom the child shall live, and the right and duty to protect, train, and discipline the child and to provide the child with food, shelter, education, and medical care, all subject to any residual parental rights, privileges, and responsibilities." Additionally, R.C. 2151.011(B)(55) defines "temporary custody" as "legal custody of a child who is removed from the child's home, which custody may be terminated at any time at the discretion of the court or, if the legal custody is granted in an agreement for temporary custody, by the person who executed the agreement."

{¶ 21} Importantly, the award of legal of legal custody is "not as drastic a remedy as permanent custody." *In re L.D.* at ¶ 7. *See also In re N.F.*, 10th Dist. No. 08AP-1038, 2009-Ohio-2986, ¶ 9. This is because the award of legal custody does not divest parents of their residual parental rights, privileges, and responsibilities. *In re C.R.* at ¶ 17; *In re Hockstok* at ¶ 8, fn. 1. Therefore, since the granting of legal custody does not divest a parent of his or her fundamental parental rights, the parent can petition the court for a custody modification in the future. *In re L.D.* at ¶ 7.

{¶ 22} "A trial court has broad discretion in proceedings involving the care and custody of children." *In re Mullen*, 129 Ohio St.3d 417, 2011-Ohio-3361, ¶ 14. We review the award of legal custody for an abuse of discretion. *In re L.D.* at ¶ 8; *In re Gales*, 10th Dist. No. 03AP-445, 2003-Ohio-6309, ¶ 13; *In re N.F.*, 10th Dist. No. 08AP-1038, 2009-Ohio-2986, ¶ 9, citing *In re Nice*, 141 Ohio App.3d 445, 455 (7th Dist.). Abuse of discretion connotes more than an error of law or judgment; rather, it implies that the trial court's decision was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 23} In the context of considering a parent's agreement to grant permanent, legal custody to a nonparent, the Supreme Court of Ohio has stated that "[p]arents may undoubtedly waive their right to custody of their children and are bound by an agreement to do so." *Masitto v. Masitto*, 22 Ohio St.3d 63, 65 (1986). Further, "[w]hether a parent

has voluntarily relinquished the right to custody is a factual question to be proven by a preponderance of the evidence." *In re Mullen* at ¶ 14. "[T]he determination of whether a 'parent relinquishes rights to custody is a question of fact which, once determined, will be upheld on appeal if there is some reliable, credible evidence to support the finding.' " *In re Mullen* at ¶ 15, quoting *Masitto* at 66.

{¶ 24} As noted earlier, appellant was not present when the court adopted the agreed entries granting legal custody of the children. Appellant contends in her assignment of error that the trial court should have conducted a colloquy pursuant to Juv.R. 29 to determine whether appellant's knowing, intelligent, and voluntary consent to the agreed entry was obtained. Appellant also contends that, even if we find that the colloquy required by Juv.R. 29 is not required at dispositional hearings, we should nevertheless find that the trial court erred by not conducting such a colloquy to determine whether her consent was knowing, intelligent, and voluntary.

{¶ 25} Juv.R. 29(D) provides that "[t]he court may refuse to accept an admission and shall not accept an admission without addressing the party personally and determining both of the following: (1) The party is making the admission voluntarily with understanding of the nature of the allegations and the consequences of the admission; (2) The party understands that by entering an admission that the party is waiving the right to challenge the witnesses and evidence against the party, to remain silent, and to introduce evidence at the adjudicatory hearing." We have previously held that Juv.R. 29 applies to adjudicatory hearings as opposed to dispositional hearings. *In re Williams*, 10th Dist. No. 03AP-1007, 2004-Ohio-678, ¶ 8. *See also In re C.M.*, 10th Dist. No. 07AP-933, 2008-Ohio-2977, ¶ 30, 34.

{¶ 26} Here, the adjudicatory hearings for the cases were held when the trial court adjudicated the children as dependent pursuant to R.C. 2151.04(C). *See* Juv.R. 2(B) (defining "adjudicatory hearing" as "mean[ing] a hearing to determine whether a child is a juvenile traffic offender, delinquent, unruly, abused, neglected, or dependent or otherwise within the jurisdiction of the court"). FCCS's motions for permanent custody, on the other hand, were filed pursuant to R.C. 2151.413 and 2151.414, which are dispositional

proceedings governed by Juv.R. 34. *In re C.M.* at ¶ 35; *Williams* at ¶ 7. *See also* Juv.R. 34(I) (providing that "[h]earings to determine whether temporary orders regarding custody should be modified to orders for permanent custody shall be considered dispositional hearings"); Juv.R. 2(M) (defining "dispositional hearing" as "mean[ing] a hearing to determine what action shall be taken concerning a child who is within the jurisdiction of the court"). Because the proceedings in question did not concern adjudicatory but, rather, dispositional matters, Juv.R. 29 does not apply. *In re C.M.* at ¶ 36 ("Accordingly, because a hearing to modify temporary custody to permanent custody is a dispositional hearing, Juv.R. 29 is inapposite."). As a result, appellant's argument with regard to Juv.R. 29 is not well-taken.

{¶ 27} Regardless of whether Juv.R. 29 applies, appellant offers four cases to support the proposition that due process protections require that "trial courts personally test through colloquy with the parent whether the parent's consent to 'permanent custody' or 'legal custody' is knowing, intelligent, and voluntary." (Appellant's Reply Brief, 5.) *See In re Terrence*, 162 Ohio App.3d 229, 2005-Ohio-3600 (6th.Dist.); *In re C.C.*, 3d Dist. No. 4-13-02, 2013-Ohio-3195; *In re Rock Children*, 5th Dist. No. 2004 CA 00358, 2005-Ohio-2572; *In re Fennell*, 4th Dist. No. 01CA45, 2002-Ohio-521. However, those cases cited by appellant concern permanent terminations of parental rights. As we earlier recognized, legal custody is a distinct concept from permanent custody because legal custody allows a parent to retain residual parental rights and petition for a modification of custody at a later date. *In re S.S.*, 12th Dist. No. CA2006-11-251, 2007-Ohio-6747, ¶ 24. Because different rationales underlie the considerations in permanent custody cases, we cannot find the principles articulated in those cases cited by appellant to be binding in the present matter.

{¶ 28} Nonetheless, we examine the record to determine whether appellant voluntarily, knowingly, and intelligently consented to the agreement.

{¶ 29} Based upon our review of the record, the facts of this case appear to indicate that appellant consented to the agreement. First, we find it important to note that appellant was represented by counsel and her guardian ad litem throughout the

proceedings, including the process leading up to the agreed judgment entries. On each of the four separate agreed entries, appellant's signature appears immediately following the agreed terms and alongside the signatures of appellant's counsel and guardian ad litem.

{¶ 30} At the hearing, the court, in reviewing the agreement as related to A.D.J., noted appellant's absence and inquired as to the voluntariness of the agreement:

> JUDGE LIAS: * * * All right and I have in front of me an Agreed Entry which is signed by all parties granting the legal cust -- the legal custody motion of Rebecca Pearson for custody of A.D.J. Mother is not present; she was present; made her appearance but then left after she signed. My question to all of you is are all of these signatures signed by free and voluntary acts of all the signatures?

(March 10, 2014 Tr. 5.) All parties, including appellant's guardian ad litem and attorney, answered in the affirmative. The trial court inquired further of appellant's counsel and guardian ad litem:

> JUDGE LIAS: And of course this was a PCC (sic) Motion and mother's ultimate loss could have been a permanent custody. This is a lesser intrusive disposition but do you believe to -- Guardian and attorney for mother, that she did sign this as her free and voluntary act?
>
> [APPELLANT'S GUARDIAN AD LITEM]: Yes, Your Honor, as Guardian, I do believe that mother signed this freely and voluntarily. [Appellant's attorney] and I have been meeting with mother since about ten o'clock this morning going through this. I know that when mother left after signing this she was rather emotional; it has been difficult for her. Mother felt that she made a lot of progress along all of these cases and I think ultimately sees this as a disappointment to her but it was her voluntary action to sign it.
>
> JUDGE LIAS: Okay. And - -
>
> [APPELLANT'S ATTORNEY]: And I agree as well.
>
> JUDGE LIAS: -- you also agree?
>
> [APPELLANT'S ATTORNEY]: Yes.

(Tr. 5-6.) When examining the agreements as they pertained to the other children, the court again asked of all present whether "the parties that you represent have signed these Agreed Entries as their free and voluntary acts * * * is that correct?" (Tr. 11.) Appellant's guardian ad litem and attorney again answered in the affirmative. Based on the presence of appellant's counsel and guardian ad litem throughout the proceedings, including the negotiations leading up the agreed entries, we find that the trial court possessed evidence of appellant's voluntary act in agreeing to the awards of legal custody. We also find that the presence of both appellant's attorney and guardian ad litem during the negotiations supports a finding that the agreement was made with appellant's knowing and intelligent consent.[1]

{¶ 31} In her appellate brief, appellant also contends that the "extended amount of time" during which the parties discussed the agreements to award legal custody implies that appellant was "bludgeoned into putting her signature on the agreements." (Appellant's Brief, 9.) We cannot accept appellant's contention that, in this case, the duration of the deliberations regarding the agreement to award legal custody implies a lack of voluntary consent. Given the serious nature of the proceedings at hand, it is to be expected that negotiations would be protracted. Thus, we cannot find that the duration of the proceedings evinces an attempt to coerce the appellant into signing the agreements. We also find the extended duration of the negotiations, as well as the explanation of appellant's guardian ad litem that appellant was emotional following the negotiations,

---

[1] Although the record is unclear regarding the reason for the trial court's appointment of a guardian ad litem for appellant, appellant suggests that it was due to the appearance of appellant's mental incompetence pursuant to R.C. 2151.281(C). (Appellant's Brief, at 1-2.) "R.C. 2151.281(C) and Juv.R. 4(B)(3) require that the court appoint a GAL 'to protect the interests of an incompetent adult in a juvenile proceeding where the parent appears to be mentally incompetent.' " *In re K.J.D.*, 10th Dist. No. 12AP-652, 2013-Ohio-610, ¶ 46, quoting *In re Baby Girl Baxter*, 17 Ohio St.3d 229, 232 (1985). We have previously held that the guardian ad litem's "introduction into the proceedings 'provides an additional level of protection for the incompetent parent' and 'works to ensure that the parent's rights are not compromised' " because the guardian ad litem "investigates the parent's situation and, regardless of the parent's wishes, recommends to the court the course of action that would be in the parent's best interest." *In re K.J.D.*, quoting *In re Moore*, 12th Dist. No. CA99-09-153 (Sept. 5, 2000). As a result, we find that the presence of appellant's guardian ad litem further supports a finding that appellant knowingly, intelligently, and voluntarily consented to the agreement.

supports a finding that the agreement was made with appellant's knowing and intelligent consent.

{¶ 32} Finally, appellant does not contest that she voluntarily decided not to attend the trial court's hearing on the disposition of the children. The court was under no obligation, as appellant contends, to continue the matter because appellant voluntarily absented herself from the proceedings without seeking leave of the court. As a result, we cannot find that appellant's due process rights were violated due to her decision to leave before the hearing on the agreed entries occurred. *See In re J.G.*, 8th Dist. No. 100681, 2014-Ohio-2652, ¶ 18-23 (no violation of due process when court held hearing awarding permanent custody of minor child without presence of the mother where mother's "actions in voluntarily leaving her last known residence and failing to communicate with her attorney or social worker * * * resulted in her absence from the hearing").

{¶ 33} We acknowledge that, because parents have constitutional custodial rights, "any action by the state that affects this parental right, such as granting custody of a child to a nonparent, must be conducted pursuant to procedures that are fundamentally fair." *In re Hockstok* at ¶ 16. Here, appellant was represented by counsel and a guardian ad litem, who were present throughout the proceedings, evincing that it was appellant's knowing, intelligent, and voluntary act to agree to the entries. Additionally, the agreements pertained to the granting of legal custody, allowing for appellant's retention of residual parental rights, as opposed to permanent custody. Therefore, under the circumstances present in this case, we find that appellant's due process rights were not violated because the trial court did not obtain appellant's knowing, intelligent, and voluntary consent to the agreed judgment entries. Accordingly, we overrule appellant's first assignment of error.

## IV. Second Assignment of Error

{¶ 34} In her second assignment of error, appellant asserts that the trial court erred by awarding legal custody of the minor children without ascertaining whether the award was in the children's best interest.

{¶ 35} "The choice among dispositional alternatives is left to the sound discretion of the juvenile court." *In re M.D.*, 10th Dist No. 07AP-954, 2008-Ohio-4259, ¶ 21. As we earlier noted, the awarding of legal custody is one of the dispositional alternatives under R.C. 2151.353(A) available to the juvenile court following the adjudication of a child as abused, neglected, or dependent. Because this was a statutorily permitted dispositional alternative, we must find that the trial court abused its discretion in order to reverse its determination. *In re M.D.* at ¶ 22. If there is not competent, credible evidence to support a juvenile court's decision regarding a child's best interest, then it is unreasonable and may be reversed. *Id.*

{¶ 36} Here, the court inquired at the March 10, 2014 hearing regarding the children's best interest. First, regarding A.D.J., the transcript reflects that the court asked the following question of all concerned parties: "[Y]ou also all agree that this is in the best interest of -- of the child. And it does provide for reasonable parenting time with the child as agreed by both mother and custodian and a place for supervision other than FCCS (sic). So, you -- you do all agree that it is in the best interest of this child?" (Tr. 6.) All of the parties answered the court's question in the affirmative. Regarding the other children, the court again inquired: "And I take it that all of you would also reiterate what you have stated in the previous case that you believe that these less intrusive dispositions of legal custody are in the best interest of the children?" (Tr. 10.) All parties again affirmed that it was in the children's best interest.

{¶ 37} Further, all parties to the agreed entries, including appellant and the children's guardian ad litem, specifically affirmed in the entries in regards to each minor child that the agreement "is in the best interest of the child." Finally, the record before the trial court included the prior reports of the children's guardian ad litem, which, regarding S.J.J., S.D.J., and A.J., found that appellant's mental health and behavioral issues rendered reunification "impossible" and recommended granting permanent custody of S.J.J., S.D.J., and A.J. to FCCS, and recommended granting legal custody of A.D.J. to Rebecca Pearson. (Guardian's Reports, at 7.)

{¶ 38} Because of the testimony by the parties present at the hearing affirming that the award of legal custody was in the children's best interest, the explicit acknowledgment in the agreed entry that the award of legal custody was in the children's best interest, and the recommendations in the reports of the children's guardian ad litem, we cannot, under these circumstances (1) find that the trial court failed to ascertain, or (2) find that the trial court abused its discretion in deciding that the award of legal custody of the children was in their best interest. Accordingly, we overrule appellant's second assignment of error.

## V. Disposition

{¶ 39} Having overruled both of appellant's assignments of error, we affirm the judgments of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch.

*Judgment affirmed.*

SADLER, P.J., and KLATT, J., concur.

————————————